UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                                                      )    Case No. 23-cr-249 (CJN))<br>WILLIAM WILKERSON,                       )<br>                         Defendant.           ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

The defense suggests that the sentence recommended by United States Probation in this case (Document 20) would constitute as sentence sufficient but not greater than necessary to meet the sentencing goals outlined in 18 U.S.C. § 3553(a). Undersigned counsel is a bit sheepish about the timing of this filing but was unaware of the Department of Justice's position as to sentencing until its Memorandum was filed on the afternoon of November 15, 2023.

*The Nature of the Offense*

The government's Memorandum accurately and fairly presents a summary of Mr. Wilkerson's actions at the U.S. Capitol on January 6, 2021, as well as his social media posts thereafter.

The full flavor of Mr. Wilkerson's experience and actions on January 6, 2021 is best assessed by viewing the video recording of the offense.   Apart from business or bank robbery cases it is uncommon for a sentencing judge to have the opportunity to view a video recording of the offense in its entirety. With the Court's permission, the defense proposes to play the recording at the sentencing hearing. The United States has consented. The recording is relatively brief – 4 minutes and 38 seconds.

While the violence and chaos taking place in other areas of the building is well

known, Mr. Wilkerson's January 6 experience was otherwise. He entered the building amidst a stream of people entering single file, walking to the end of the hallway, and returning to exit thereafter.   There does not appear to have been any law enforcement effort to block the entry of those entering the building, although broken window glass would indicate that some prior forced entry was made.   There were approximately 16 Capitol Police officers gathered inside the entrance - apparently assuring that the trespassers did not stray from the immediate area.   The contact between those filing in and out of the building and the officers appeared to be good natured and cordial. While the January 6 event overall may be accurately described as a riot, Mr. Wilkerson was not a rioter. Neither were those inside the building near the Senate Wing door at the time.

As the government correctly points out, Mr. Wilkerson acknowledged seeing signs of forced entry as he approached the entrance. There is no question that he knew or should have known that he was uninvited and trespassing on Capitol grounds.

*FBI Interview*

Mr. Wilkerson consented to an interview when arrested on January 8, 2023 and provided password access to his cellular phone. It is fair for the government to suggest that he was unapologetic for his actions at that time.

Mr. Wilkerson is a resident of Lawrence County, Indiana, a sparsely populated and largely rural county in southern Indiana where then- President Trump amassed 74.04% of the vote in the 2020 presidential election.

https://www.wbiw.com/2020/11/03/2020-lawrence-county-general-election-results, last visited November 17, 2023.

It is unlikely that Mr. Wilkerson had any personal contact with anyone who was not a fervent supporter of then-President Trump or who was skeptical of claims of widespread election fraud and a stolen election.

As Mr. Wilkerson told interviewing agents, his primary source of information and news was Fox News. The consistent message delivered by conservative media concerning the 2020 presidential election was that the election was rigged and "stolen by Joe Biden" from then-President Trump. He heard and responded to the then-President's call for "his American citizens" to appear in Washington DC and protest the results of the election. He was proud that he was the only member of his family or circle of friends that had the means to travel to Washington and answer the call of the President. He expressed that the rights of citizens had been "stomped on" and that citizens have the right to protest. He expressed that "we're being told something in the media and it's making us angry." He anticipated that the event was an invitation "to show up at the Capitol Building and protest that we think he lied and that everything was rigged against Donald Trump…".

He arrived in Washington "right as they were getting in the Capitol." He "walked through and just seen that the Capitol Police were standing there letting it happen. So I figured that they knew that they were ... I seen it all on tv and how it happened … and we were using our numbers against your numbers …. which is going to happen again eventually. They was just standing there … and I seen them … and I was like 'I ain't going to be here' and I turned around and I walked right back out."

*The Proceedings*

Mr. Wilkerson's acceptance of responsibility has been prompt and robust. There

is little more that Mr. Wilkerson could have done to further ease the burden of prosecution or conserve the resources of the Court. He appeared before the D.C. Magistrate Judge on June 22, 2023, and counsel was appointed. Mr. Wilkerson had executed a plea agreement and associated documents (Documents 13, 14 and 15) by July 17, 2023. The Information was filed on July 25, 2023. Document 10. This Court accepted Mr. Wilkerson's guilty plea on August 22, 2023. He is prepared to proceed to sentencing as scheduled on November 20, 2023, as scheduled.

*Sentencing Factors*

Matters relevant to most 18 U.S.C. § 3553(a) factors are adequately addressed in the Presentence Investigation Report before the Court.

The need for this Court's sentence to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct is a difficult task where the criminal histories of other defendants are not readily available and where offense level calculations taking specific offense characteristics are absent. While it seems apparent that the Department of Justice has attempted to look at other cases in an attempt to make its recommendations internally consistent, the choice of the three cases submitted as comparable cases seems a bit strained.

The Department of Justice compilation of *Sentences Imposed in Cases Arising Out of the Events of January 6, 2020* reflects government recommendations and sentences imposed in prosecutions for January 6 prosecutions. Over 230 prosecutions for violations of 40 U.S.C. § 5104(e)(2)(G) only are reflected. The majority did not result in executed sentences. Counting cases where a sentence of incarceration was imposed is just too tedious to undertake. There seems little to commend focusing on three cases

that resulted in some term of incarceration as a useful reference in a consideration of Mr. Wilkerson's case.

*United States v. Glen Croy,* 21-CR-162, is referenced by the government for comparison. The DOJ compilation would reflect that the government advocated for a sentence of 60 days incarceration and that the sentence imposed was a 36-month term of probation, with a 14-day stay at a residential reentry center (rather than a 14-day jail sentence) imposed as a condition. *See*, 21-CR-162, Document 58. As the government noted, Mr. Croy entered the Capitol twice. His first entry was described in the government's Sentencing Memorandum:

The defendant first entered the U.S. Capitol through the Senate Wing Door in a stream of rioters pouring into the building. Moreover, he walked through the doors roughly five minutes after the adjoining window was first smashed with a riot shield and doors then kicked open to allow in rioters. As he entered, the defendant chanted "Whose House, Our House!" He would have then walked over the shattered glass of the window as he went to the Crypt. Once in the Crypt, he filmed the scene as he and other rioters packed the room and eventually pushed back law enforcement officers to go further into the Capitol. He continued to walk with the mob through the hallway by the House Wing door, again pushing back law enforcement through overpowering them with the size of their crowd. While inside, the defendant treated the U.S. Capitol like an amusement park, taking photos and videos of himself and fellow rioters dressing up statues and later widely sharing them while bragging about his actions. Document 46, p. 16.

Mr. Croy's second entry into the Capitol was described as:

As if his first trip through the Capitol was not enough, after watching the action on the outside for another 40 minutes, the defendant entered the building a second time in a manner as chaotic as his first entry. When he entered through the Rotunda door, he plowed into the building in a crowd of other rioters that collectively pushed past several law enforcement officers, engulfing one of them in their midst. In addition to this forceful entry into the Capitol, the defendant would have heard an alarm sounding throughout the Capitol rotunda and its antechamber: a loud, high pitched, continuous beeping, similar to a smoke alarm. Every indication of how he entered the U.S. Capitol – both the first and second time – underscores that he did not have permission to be there and could not have thought he had permission to be there. Document 46, p. 17.

*United States v. Derek Sulenta,* 22-CR-340, referenced in the government's Memorandum, involved a significantly greater intrusion and associated conduct. There,

Mr. Sulenta spent 47 minutes inside the Capitol Building and entered a Senate Conference Room that is typically not open to the public even when the Capitol is not locked down. 22-CR-340, Document 20, p. 7. The government advocated for a 21-day jail sentence. A 14-day sentence or incarceration was imposed.

In *United States v. Michael Timbrook*, 21-CR-361, the government argued for a 3-month term of incarceration and 36 months of probation. The sentence imposed was 12 months of probation and 14 days of intermittent confinement, to be served on 7 consecutive weekends. 21-CR-361, Document 45. Mr. Timbrook's conduct was described as:

> Timbrook (1) entered the Capitol Building despite having been pepper sprayed by police officers; (2) witnessed assaults against police officers at four different police lines prior to entering the Capitol Building; (3) saw broken glass and rioters climbing through windows when he entered the Capitol Building; (4) ignored the directions of police officers to exit the Capitol and helped breach a police line inside the Capitol Building; (5) witnessed the violent assault of police officers at the Columbus Door; (6) entered a sensitive area in the Capitol Building—the Office Suite of the Speaker of the House—that is not open to the public; and (7) repeatedly spread misinformation about the riot and expressed pride in his participation on social media… Document 37, p. 2.

Mr. Wilkerson would score as a Criminal History Category of I, were Sentencing Guidelines applicable. It seems unlikely that very many of the hundreds of cases filed involved conduct less culpable than that of Mr. Wilkerson. The probation recommendation of a probated sentence requiring significant community work service as a condition probation would be a reasonable sentence and one which would comply with the statutory requirements.

Dated: November 17, 2023

*William H. Dazey, Jr.*
William H. Dazey, Jr.

>Indiana Federal Community Defenders, Inc.
>111 Monument Circle, Ste. 3200
>Indianapolis, IN. 46204-5172
>(317) 383-3520
>Attorney for Defendant

## CERTIFICATE OF SERVICE

 I certify that on November 17, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>*William H. Dazey, Jr.*
>William H. Dazey, Jr.